CONNOR ELECTRIC CO., INC. *vs.* WESTINGHOUSE ELECTRIC
& MANUFACTURING COMPANY.

Suffolk.    December 3, 1930. — February 24, 1931.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Contract*, Construction, Performance and breach.

A contract, by a company manufacturing electrical goods, to furnish to a
purchaser "f. o. b. cars point of shipment" certain electrical apparatus
made up of six slate panels, in all about eighteen or nineteen feet long
and six feet high, to which were to be attached or connected various
appliances made up of mounts, some weighing as much as seventy
pounds and some of extreme delicacy, included the following express
provisions: "The apparatus shall be installed by and at the expense of
the Purchaser, unless otherwise expressly stipulated. . . . Unless
specified to the contrary, when the switchboard apparatus is to be
mounted on the panels or on a frame work integral with the panel
supports, switchboards will be assembled at the Company's Works to
such an extent as may be necessary to insure accuracy of workmanship
and design.    Other apparatus not to be so mounted will not be as-
sembled at the Works unless specifically mentioned in the attached
detailed specifications. . . . The Company reserves the right to dis-
assemble such parts of switchboards as may be necessary for conven-
ient and safe shipment.  The Purchaser will assemble and erect all
switchboard parts on his premises, unless particular mention is made
in detailed specifications that the Company will so assemble and erect."
Nowhere in the contract were there stipulations for assembly or erection
modifying the foregoing provisions.  *Held*, that the manufacturer was
not required by the contract to affix, connect and put in working order
upon the panels such equipment and apparatus as the contract con-
templated was to be borne upon and supported by the panels when in
position.

CONTRACT for alleged breach by the defendant of the
contract described in the opinion, under which the plain-
tiff contended that the defendant was required to instal
the apparatus therein described.  Writ dated October 1,
1928.

In the Superior Court, the action was heard by *Collins*,
J., without a jury.  The plaintiff claimed $1,230.14, ex-
pense of installation and $85.01 for certain materials and
parts furnished and expenses incurred.

Material facts are stated in the opinion. The judge found for the plaintiff in the sum of $85.01 only. The plaintiff alleged exceptions.

*M. Greenman,* for the plaintiff.

*R. Proctor,* for the defendant.

WAIT, J. The plaintiff sues to recover the cost of connecting, fitting and putting together the various parts of a switchboard equipment installed at the Danvers State Hospital. The apparatus was furnished by the defendant. The trial judge refused to rule that the plaintiff purchased a " switchboard, complete as a unit and not a collection of parts and apparatus from which a switchboard could be constructed," which it was the duty of the defendant to deliver " complete as one unit, with apparatus mounted thereon "; or to rule that under the terms of their contract, it was the defendant's duty to " mount items of apparatus onto the panels," and " to affix and annex to the switchboard items of apparatus listed on the panel specifications."

The facts are not now in dispute. The contract between the parties was made up of a proposal of the defendant to furnish the purchaser (the plaintiff) f. o. b. cars at point of shipment, apparatus as specified below. Switchboard 1. " Complete Switching Equipment in accordance with Specifications #1797 "; a switchboard agreement sheet; a switchboard inquiry and data sheet; a panel specification for each of six panels; a page of conditions and agreements, and an acceptance by the plaintiff approved by the proper officer of the defendant. The equipment was made up of six slate panels, in all about eighteen or nineteen feet long and six feet high, to which were to be attached or connected various appliances, some of them designed to be placed upon and fastened to particular panels. Some pieces of the apparatus, designed ultimately to be fastened to a panel and to be supported by it, weighed as much as sixty or seventy pounds, and some were of extreme delicacy. Certain parts were not to be made in the defendant's factory, but were to be sent to Danvers direct from the place of supply. In express words, the

contract provided that "The apparatus shall be installed by and at the expense of the Purchaser, unless otherwise expressly stipulated"; that certain material for small wiring, "power and exciter busses," connections between certain apparatus, etc. "when the switchboard is not completely assembled at the factory" would "be furnished uncut"; that certain material for connections "when supplied by the Company . . . will be furnished in commercial lengths, unfabricated, unless otherwise specified." Under the subheading "Fabrication, Assembly and Erection" the contract states: "Unless specified to the contrary, when the switchboard apparatus is to be mounted on the panels or on a frame work integral with the panel supports, switchboards will be assembled at the Company's Works to such an extent as may be necessary to insure accuracy of workmanship and design. Other apparatus not to be so mounted will not be assembled at the Works unless specifically mentioned in the attached detailed specifications. When the apparatus is not assembled at the Works, the pipe for frame work and oil circuit breaker supports, wire, rods, tubes and bars for connections and busses will not be fabricated at the Works, but will be furnished in bulk, in commercial lengths, with the necessary fittings. All iron and steel parts fabricated at the Works will be painted before shipment. Infabricated parts will be furnished unpainted. The Company reserves the right to disassemble such parts of switchboards as may be necessary for convenient and safe shipment. The Purchaser will assemble and erect all switchboard parts on his premises, unless particular mention is made in detailed specifications that the Company will so assemble and erect." Nowhere in the contract do we find stipulations for assembly or erection modifying the foregoing provisions. From the language, read in the light of the circumstances, the judge was justified in finding and ruling that no ambiguity appeared; and that the parties contemplated delivery of many items of apparatus to be put together, at Danvers, by the purchaser, as a switchboard equipment — not the delivery, by the manufacturer and

seller, of a unit switchboard completely assembled ready for operation when put in position by the purchaser. It is an unreasonable interpretation to hold that the parties contemplated placing "f. o. b. cars point of shipment" slate panels supporting heavy pieces of apparatus and delicate appliances, all likely to be injured in railroad transportation; or that a seller, who in terms reserved the right to disassemble, "as may be necessary for convenient and safe shipment," apparatus once placed in position at its works on a panel "to such an extent as may be necessary to insure accuracy of workmanship and design," was to reassemble such apparatus in working condition at the place where it was to be used. Especially is this so in view of the final sentence under the subheading already quoted.

The plaintiff contends that the word "mounted," which is used in various parts of the contract, (particularly in the "panel specifications," where it is stated, "Upon each of these panels will be mounted the following apparatus,") should be construed to impose on the defendant the obligation to affix, connect and put in working order upon the panels such equipment and apparatus as the contract contemplates is to be borne upon and supported by the panels when in position. The judge was right in not yielding to this contention. When dealing with the obligation to do work in the manufacture, putting in position and final locating of the pieces which make up the "switchboard equipment," the contract uses the words "fabricate," "assemble" and "erect" in their substantive, adjective or verb forms. It uses the word "mounted" in indicating the place where an object is to rest, and not in indicating the duty of placing it there, in the quality of an adjective rather than a verb. Any inference to the contrary is precluded by the use of words in the clause with reference to "Fabrication, Assembly and Erection." The defendant will "assemble" at its works apparatus which is to be "mounted" on the panels or a framework integral with the panel supports, but only so far as necessary to insure accuracy of workmanship and design. It may then "dis-

assemble" such parts as may be necessary for safe transportation. The purchaser is to "assemble and erect" all parts on his premises. We find no use of the word "mount" in other parts of the contract which contradicts the meaning here given to it.

No question other than of interpretation and construction of the contract agreement is presented. The rulings were right and the findings are justified.

*Exceptions overruled.*